1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Honorable Judge John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAMMAR AMEUR,

              Plaintiff,

    v.

ROBERT M. GATES, et al., in their individual capacities,

              Defendants.

Case No. 2:11-cv-1671-JCC

**DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO TRANSFER**

(Note on Motion Calendar for: April 6, 2012)

      Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), Defendants move this Court to dismiss Plaintiff Mammar Ameur's claims against them because venue does not lie in the Western District of Washington and because this Court lacks personal jurisdiction over twenty-one of the twenty-two Defendants.[1] In the alternative, Defendants move the Court to transfer this case to the District of Columbia under 28 U.S.C. §1404(a). Proposed orders are attached.

## INTRODUCTION AND BACKGROUND

      Plaintiff, a citizen and resident of Algeria, sues twenty-two high-level government and military officials in their individual capacities. He alleges he was mistreated in Afghanistan and

---

[1] Defendant Robert M. Gates concedes that this Court has personal jurisdiction over him.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Cuba while detained by the United States military, and that Defendants are personally liable for his detention and mistreatment.

In his complaint, Plaintiff claims that while he was in Pakistan in 2002, Pakistani security forces improperly arrested him under the direction of an "unknown American official," detained him for six months until early 2003, and then transferred him to the United States military. *See* Am. Compl. ¶¶ 64-68. The military held Plaintiff at Bagram Air Base, Afghanistan, for three months before transferring him to the Naval Station at Guantánamo Bay, Cuba. *See id.* ¶ 4, 69. He remained at Guantánamo until he was transferred to Algeria in 2008. *See id.* ¶¶ 4, 85. Plaintiff alleges that in 2004, a Combatant Status Review Tribunal (CSRT) mistakenly declared him an enemy combatant, which led to his lengthy detention. *Id.* ¶ 86. He adds that in November 2005, he was approved for transfer from Guantánamo, but was not notified of that approval until February 2007. *Id.* ¶¶ 89-90. He also claims he suffered mistreatment and torture while detained, and that his detention and mistreatment stemmed from policies, programs, and techniques allegedly created, authorized, and implemented by senior government and military officials. *See id.* ¶¶ 22-50, 68-78, 96-127. Plaintiff brings nine claims: six for alleged violations of customary international law and the Geneva Conventions, *see id.* ¶¶ 131-61; two for purported violations of the United States Constitution, namely, the Fifth Amendment right to due process and the First Amendment right to free exercise of religion, *id.* ¶¶ 163-74; and one for alleged violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1. *Id.* ¶¶ 176-80.

## ARGUMENT

Plaintiff's claims should be dismissed for two reasons. First, venue is improper here, or in the alternative, the Court should transfer this case to the District of Columbia. Second, the Court lacks personal jurisdiction over all Defendants but former Defense Secretary Robert Gates.

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Because the venue matter applies to all Defendants and will resolve this case in the most efficient manner possible, we address that issue first. Defendants then show that, venue aside, this Court lacks personal jurisdiction over all Defendants but former Secretary Gates.

## I.     VENUE IS IMPROPER.

Venue does not lie in the Western District of Washington for this suit, which involves allegations against senior officials based in the District of Columbia and Northern Virginia by an Algerian citizen who was detained in Afghanistan and Cuba. Plaintiff has the burden of showing that venue is proper. *See Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003) ("Once venue is challenged, the burden is on the plaintiff to show that venue is proper." (internal quotation and citations omitted)).

Plaintiff cannot meet his burden. Under the venue statute, 28 U.S.C. § 1391, venue simply is not proper here. In cases involving individual capacity claims against federal officers, § 1391(b) governs venue. *See Stafford v. Briggs*, 444 U.S. 527, 544-45 (1980). Section 1391(b) permits venue only in (1) any judicial district where a defendant resides, if all defendants reside in the same State; (2) a judicial district where a substantial part of the events underlying the claim occurred; or (3) a judicial district in which any defendant can be found, if there is no other district where venue would be proper. § 1391(b)(1)-(3). These statutory requirements are meant "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (discussing earlier version of § 1391(b)).

These requirements are not satisfied here. Defendants do not all reside in the same State, as Plaintiff himself recognizes. *Compare* Am. Compl. ¶ 26 (alleging that Defendant Rumsfeld resides in Illinois) *with* Am. Compl. ¶ 28 (alleging that Defendant Wolfowitz resides in

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 3

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Maryland). And *none* of the events underlying Plaintiff's claims—never mind a "substantial part"—arose even remotely close to this district. Plaintiff makes no allegations otherwise.

As for Plaintiff's alleged basis for venue—§ 1391(b)(3), *see* Am. Compl. ¶ 20—even assuming the one Defendant with alleged contacts with Washington "may be found" in this district, that still would not be enough because venue is proper elsewhere under § 1391(b)(2). *See Ciralsky v. CIA*, 689 F. Supp. 2d 141, 162 (D.D.C. 2010) ("Section 1391(b)(3) is only applicable if there is no district in which venue is proper under one of the venue statute's first two provisions." (internal quotation omitted)). [2]

In determining whether a "substantial part" of events occurred in a district—the standard for § 1391(b)(2)—a court makes "more a qualitative than a quantitative inquiry." 17 *James Wm. Moore et al.*, *Moore's Federal Practice* § 110.04[1] (3d ed. 2009). "[T]he court ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim." *Id.* An example of this is *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir 2001), where the court—faced with a dispute over a boat insurance policy—found venue proper in the district where the insured boat sank because that event was "one part of the historical predicate for the instant suit." *Id.* at 42-43. Additionally, because venue is proper in any district where a "substantial part of the events" occurred, venue may lie in multiple districts and "is not limited to the district with the *most* substantial events." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (discussing companion subsection of venue statute) (citations omitted). *See also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) (noting venue may be proper in multiple districts under § 1391(b)).

---

[2] That former Secretary Gates does not contest personal jurisdiction has no bearing on venue. The question of personal jurisdiction is distinct from that of venue. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178-79 (9th Cir. 2004).

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Applying the above principles, a "substantial part of the events" underlying Plaintiff's suit undoubtedly occurred in other judicial districts, making venue proper there—not here. Plaintiff's complaint specifies actions senior government officials allegedly took regarding detention and interrogation policies and techniques. *See, e.g.*, Am. Compl. ¶¶ 96 (alleging Defense Secretary Rumsfeld ordered an overhaul of operations at Guantanamo that resulted in unlawful interrogation techniques); 101 (alleging Deputy Secretary of Defense Wolfowitz discussed and promoted interrogation techniques with Defense Department leadership); 102 (alleging Rumsfeld signed a memorandum authorizing interrogation techniques); 104 (alleging Rumsfeld rescinded his earlier authorization); 107 (alleging Rumsfeld issued a memorandum regarding interrogation techniques to commander of U.S. Southern Command); 113 (alleging then-Secretary of the Navy England signed a memorandum implementing CSRT procedures); 29, 121 (alleging then-Deputy Secretary of Defense England circulated memorandum regarding detainee review procedures to various officials including the heads of the Federal Bureau of Investigation and the Department of Homeland Security).

These allegations unquestionably are "one part of the historical predicate" of Plaintiff's suit. *Uffner*, 244 F.3d at 42. Indeed, the thrust of Plaintiff's complaint is that he was held under a flawed CSRT process—which England allegedly implemented—and was mistreated while detained because Rumsfeld and Wolfowitz allegedly considered and authorized such mistreatment. Furthermore, the above allegations comprise nearly all the specific allegations against these Defendants, *see generally* Am. Compl. ¶¶ 26-29, 64-127, and therefore are inherently "significant events" that are "material" to Plaintiff's claims against them. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 354 (2d Cir. 2005). In short, these allegations are a "substantial part" of the events underlying this action.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

And these alleged events certainly occurred within other judicial districts. Although Plaintiff does not plead precisely where these Defendants acted, it is unreasonable to infer that the Secretary of Defense ordered an overhaul of Guantánamo and signed memoranda regarding interrogation policies, the Deputy Secretary of Defense had discussions with Defense Department leadership about interrogation techniques, the Secretary of the Navy signed a memorandum regarding detention policies, and the Deputy Secretary of Defense circulated a memorandum on detainee review procedures to other high-level officials headquartered in the District of Columbia—all while outside the United States. *Cf. Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007) (noting courts "must draw all *reasonable* inferences in favor of the nonmoving party" when considering 12(b)(3) motion (emphasis added)) (citation omitted). Rather, these actions occurred either in the District of Columbia, which is the seat of the federal government; in the Eastern District of Virginia, where the Pentagon is located; or in both places. Therefore, venue would be proper in either of those locations under § 1391(b)(2). Consequently, venue cannot be proper here under § 1391(b)(3).

Moreover, that these allegations involved the conspiring about, planning, and supervision of events that occurred elsewhere makes them no less significant for venue purposes. *See Freeman v. Fallin*, 254 F. Supp. 2d 52, 57 (D.D.C. 2003) ("Courts have found venue proper in *Bivens* actions where substantial conspiring, planning, or supervision of an event occurred, even if the event itself took place in another judicial district." (citing *Egervary v. Young*, 159 F. Supp. 2d 132, 151 (E.D. Pa. 2001), *rev'd on other grounds*, 366 F.3d 238 (3d Cir. 2004), and *Clayton v. Prudential Ins. Co. of Am.*, 554 F. Supp. 628, 631 (S.D. Tex. 1982))). In sum, regardless of exactly where these alleged events transpired, venue clearly does not lie in the Western District of Washington under § 1391(b)(3).

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Indeed, almost every other recent case similar to this one has been adjudicated elsewhere, namely, in the District of Columbia. *See Al-Zahrani v. Rodriguez*, No. 10-5393, 2012 WL 539370 (D.C. Cir. Feb. 21, 2012) (adjudicating individual capacity claims against senior government officials by former Guantánamo Bay detainees); *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) (adjudicating individual capacity claims against senior government officials by former detainees in Iraq and Afghanistan); *Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009) (adjudicating individual capacity claims against senior government officials by former Guantánamo Bay detainees) (per curiam); *Al Janko v. Gates*, No. 1:10-cv-1702, 2011 WL 6440906 (D.D.C. Dec. 22, 2011) (same for single former detainee's claims), *appeal docketed*, No. 12-5017 (D.C. Cir. Jan. 25, 2012). *But see Hamad v. Gates*, No. C10-591, 2010 WL 4511142 (W.D. Wash. Nov. 2, 2010) (Pechman, J.) (adjudicating tort claims brought by former Guantanamo Bay detainee against senior government officials).

The only case adjudicated outside of the District of Columbia—*Hamad*—is readily distinguishable. Simply put, *Hamad* involved a different complaint. The allegations detailed above—which squarely place venue elsewhere—were not before the court in *Hamad* when it considered venue. *See* Complaint, *Hamad v. Gates*, No. C10-591 (W.D. Wash. Apr. 7, 2010), ECF No. 9 (original *Hamad* complaint). Indeed, in her ruling on venue, Judge Pechman took care to note that "Hamad's complaint does not target Defendants' general activities in setting military policy." 2010 WL 4511142, at *6. Not so here. Plaintiff's complaint specifically targets Rumsfeld's, Wolfowitz's, and England's activities in setting such policy. *See* Am. Compl. ¶¶ 96, 101-02, 104, 107, 113, 121. Therefore, venue for Plaintiff's claims lies elsewhere, either in the District of Columbia or in the Eastern District of Virginia.

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Additionally, *Ali v. Rumsfeld* demonstrates that, of these two possible locations, the District of Columbia is the appropriate venue here. In *Ali*, aliens whom the United States military detained in Iraq and Afghanistan brought statutory, international law, and constitutional tort claims against senior government officials for alleged abuses the detainees suffered while in custody. *See In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 91 (D.D.C. 2007), *aff'd sub nom. Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011). The case originated as four separate actions filed in four different districts against four individuals. *See In re Iraq & Afg. Detainees Litig.*, 374 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005).[3] *In re Iraq* went before the Multidistrict Litigation Panel, which consolidated the cases and sent them to the District of Columbia, despite the fact that none of the parties wanted the case to be there. *Id.* (noting that plaintiffs wanted the case in the Southern District of New York and defendants wanted the case in the Eastern District of Virginia). As the panel noted, "the nation's capital provides a particularly appropriate forum for lawsuits brought against the Secretary of Defense and three senior military officers for conduct that allegedly transpired in connection with their work for the United States." *Id.*

Moreover, the Ninth Circuit has recognized the connection between the District of Columbia and claims arising from federal officials' actions abroad, even when—in contrast to this case—the events underlying the claims had little to do with that district. In *Kashin v. Kent*, 457 F.3d 1033 (9th Cir. 2006), the court applied District of Columbia law to determine whether the United States' consul general in Russia acted within the scope of employment when he was involved in a car accident while leaving a gym in Moscow. *Id.* at 1034-35. The court did so even though the connection between the car accident and that district was "tenuous." *Id.* at 1037. In

---

[3] Presumably, the plaintiffs filed separate actions in an attempt to comply with venue and personal jurisdiction requirements.

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

arriving at this decision, the court emphasized that the Department of State is located in the District of Columbia and that its foreign actions are "inextricably bound up with the District of Columbia in its role as the nation's capital." *Id.* (quoting *Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 32 (D.D.C. 2006)).[4]

Here, the connection between Plaintiff's claims and the District of Columbia and its environs is far stronger. As explained above, there is little doubt that a substantial part of Defendants' alleged misdeeds transpired there. Plaintiff avers that senior government officials created, authorized, and implemented policies that led to his abuse as a detainee. *See, e.g.*, Am. Compl. ¶¶ 96 (alleging Rumsfeld ordered overhaul of operations at Guantanamo); 101 (alleging Wolfowitz discussed interrogation techniques with Defense Department leadership); 102, 104, 107 (alleging Rumsfeld signed various memoranda regarding interrogation techniques); 113 (alleging Secretary of the Navy England signed a memorandum implementing CSRTs); 121 (alleging Deputy Secretary of Defense England circulated memorandum regarding detainee review procedures).

It is axiomatic that such orders, discussions, memoranda, and policies—coming from the former Secretary of Defense, two Deputy Secretaries of Defense, and the Secretary of the Navy—are "inextricably bound up with the District of Columbia in its role as the nation's capital." *Kashin*, 457 F.3d at 1037. If the "tenuous" connections between the District of Columbia and the tort in *Kashin* were enough to establish that district as the appropriate source of law in that case, all the more so the pervasive connections here between the District of

---

[4] Notably, the case that *Kashin* quoted to show the connection between government actions abroad and the District of Columbia, *Rasul v. Rumsfeld*, involved a complaint strikingly similar to Plaintiff's—tort claims by former Guantánamo Bay detainees against senior Department of Defense officials, including many of the Defendants here. *See Rasul*, 414 F. Supp. 2d at 29 n.2.

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Columbia and Plaintiff's claims are enough to establish venue in that district. *See* 28 U.S.C. § 1391(b)(2). Because, at bare minimum, venue would be proper in the District of Columbia, if not also in the Eastern District of Virginia, this action should be dismissed for improper venue.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF COLUMBIA.

Even if this Court determines that venue is proper here—which it is not—the Court should transfer the case to the District of Columbia for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). The factors for determining whether to transfer include: (1) the State that is familiar with the governing law; (2) the plaintiff's choice of forum; (3) the respective parties' contacts with the forum; (4) the contacts in the forum relating to the cause of action; (5) differences in costs in litigating in the two forums; (6) the ability to compel non-party witnesses to attend trial; and (7) the ease of access to sources of proof. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).

These factors favor transfer. The United States intends to substitute itself as sole defendant under 28 U.S.C. § 2679(b) for Plaintiff's customary international law and Geneva Convention claims, and in determining whether substitution is proper, local District of Columbia scope-of-employment law will apply. *See Kashin*, 457 F.3d at 1037; *Rasul v. Myers*, 512 F.3d 644, 657 (D.C. Cir.), *vacated*, 129 S. Ct. 763 (2008), *reinstated in relevant part*, 563 F.3d 527 (D.C. Cir. 2009). *But see Hamad*, C10-591, 2011 WL 6130413, *9-10 (W.D. Wash. Dec. 8, 2010) (applying Virginia law to scope question in similar case). Also, venue will lie in the District of Columbia for the resulting claims against the United States, *see* 28 U.S.C. § 1402(b), and judicial efficiency clearly is served by having a single court handle all the claims here. Although Plaintiff chose this forum, because he does not reside here, his choice is given less

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 10

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

weight. *See* 17 *James Wm. Moore et al.*, *Moore's Federal Practice* § 111.13[1][c][ii] (3d ed. 2009). Moreover, for Plaintiff—who lives across the Atlantic Ocean, *see* Am. Compl. ¶ 2—the District of Columbia would be no more inconvenient than the Western District of Washington. Plaintiff has no known contacts with this forum, and most of the Defendants have no alleged contacts. *See id.* ¶¶ 22-50. None of the events underlying this suit occurred here, while many of them occurred in or near the District of Columbia. And litigating in the District of Columbia would be less expensive because of its proximity to relevant records and witnesses. With such proximity, compulsory process is more likely to be available for non-party witnesses than here, and access to proof would be easier than in Seattle. In sum, even assuming venue is proper, this Court should transfer the case to the District of Columbia.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE TWENTY-ONE NON-RESIDENT DEFENDANTS.

Regardless of whether venue is proper or should remain here, Plaintiff has failed to meet his burden of establishing the Court has jurisdiction over the twenty-one non-resident Defendants. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). Indeed, Plaintiff has alleged forum contacts for only four of those Defendants—Mullen, Hill, McNeill, and Harris, *see* Am. Compl. ¶¶ 33-34, 39, 48—and the contacts alleged fall well short of satisfying the burden Plaintiff faces. For the remaining seventeen non-resident Defendants, Plaintiff failed to allege *any* contacts.

### A.  The Standard.

Where defendants move to dismiss a complaint for lack of personal jurisdiction on the pleadings alone, a plaintiff must demonstrate that his or her allegations, taken as true, make a prima facie showing of personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 800. In other

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1   words, he must demonstrate facts that—taken as true—establish the court has jurisdiction. *See*

2   *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citation and quotation omitted).

3           To meet this burden, Plaintiff must show for each Defendant that Washington State law

4   allows for jurisdiction and that the exercise of jurisdiction comports with the Due Process

5   Clause. *See Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 850 (9th Cir. 1993).

6   Where, as here, a plaintiff's claims are unrelated to a defendant's contacts with the forum, a

7   court must exercise what is known as "general jurisdiction." *See Helicopteros Nacionales de*

8   *Columbia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). Under Washington law, general

9   jurisdiction extends to the limit of due process. *See Amoco Egypt*, 1 F.3d at 850-51; *MBM*

10  *Fisheries v. Bollinger Mach. Shop & Shipyard, Inc.*, 804 P.2d 627, 631 (Wash. Ct. App. 1991).

11  Accordingly, the only inquiry here is whether the exercise of such jurisdiction complies with due

12  process. *See Amoco Egypt*, 1 F.3d at 851 (noting that in a general jurisdiction analysis "the

13  statutory and constitutional standards merge into a single due process test" (internal citation and

14  quotation omitted)). The due process test has two separate inquiries: (1) whether the defendant

15  has enough contacts with the forum; and (2) whether the exercise of jurisdiction would be

16  reasonable. *Id.* (citation omitted). Federal law controls these inquiries. *See Cubbage v. Merchent*,

17  744 F.2d 665, 667 (9th Cir. 1984) (citation omitted).

18

19          Under the Due Process Clause, a court may exercise personal jurisdiction over a non-

20  resident defendant only if that defendant has "minimum contacts" with the forum such that

21  subjecting him to suit there would not "offend traditional notions of fair play and substantial

22  justice." *Helicopteros*, 466 U.S. at  414 (internal quotations and citations omitted).  In suits

23  involving multiple individual defendants—like Plaintiff's suit here—the requirements of the Due

24  Process Clause "must be met as to each defendant."  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th

25

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Cir. 1990) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). As such, Defendant Gates's waiver of his personal jurisdiction defense has no effect on this Court's jurisdiction over the other Defendants.

The "minimum contacts" requirement is necessary to ensure fundamental fairness and to avoid undue burdens on a defendant in litigating in a distant and inconvenient forum. *See, e.g.*, *International Shoe v. Washington*, 326 U.S. 310, 317-18 (1945). It fully applies in suits against federal officers in their individual capacities: "in order to bring a damage action against a federal official in his individual capacity . . . the normal rules for establishing *in personam* jurisdiction apply." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1459 (9th Cir. 1985) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327-28 (9th Cir. 1982)); *see also McCabe v. Basham*, 450 F. Supp. 2d 916, 926 (N.D. Iowa 2006) (rejecting constitutional tort claims against senior government officials for lack of personal jurisdiction); *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1486 (E.D. Wis. 1993) (same), *aff'd*, 35 F.3d 569 (7th Cir. 1994); *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991) (same).

Indeed, in such suits, failure to follow the "normal rules" for establishing personal jurisdiction would unfairly impose upon federal officials the burden of defending against personal liability suits throughout the United States. As the Supreme Court noted, allowing individual capacity suits to "be brought against these federal officers while in Government service—and . . . pressed even after the official has left federal service—in any one of the 95 federal districts," would have the undesirable effect of placing "federal officers, solely by reason of their Government service, in a very different posture in personal damages suits from that of all other persons." *Stafford*, 444 U.S. at 544 (refusing to apply venue statute for suits against the United States to individual capacity suits against federal officers). Moreover, foregoing personal

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1   jurisdiction requirements in such suits would only increase the "social costs" and "deterrence of

2   able citizens from acceptance of public office" that accompany these actions. *Harlow v.*

3   *Fitzgerald*, 457 U.S. 800, 814 (1982) (discussing the reasons underlying the qualified immunity

4   doctrine).

5          These concerns are especially acute when prominent senior officials tasked with critical

6   national security functions are defendants, as is the case here. Such individuals are relatively

7   easy targets for litigation, and absent a proper application of due process requirements, these

8   officers would undoubtedly be burdened and distracted by litigation nationwide. *Cf. Stafford*,

9   444 U.S. at 545 (acknowledging burdens federal officials would face in defending individual

10  capacity suits if venue lay nationwide). Therefore, the "minimum contacts" requirements of the

11  Due Process Clause must be carefully applied to each of the non-resident Defendants.

12         Here, where Plaintiff asks this Court to exercise general jurisdiction over non-resident

13  *individuals*, it is unclear whether the Court can even exercise such jurisdiction. The Supreme

14  Court has recognized that courts may exercise general jurisdiction over nonresident corporations

15  where their contacts with the forum are "continuous and systematic." *Helicopteros*, 466 U.S. at

16  415-16. The Court has expressed doubt, however, over whether such jurisdiction can ever exist

17  for individuals: "It may be that whatever special rule exists permitting 'continuous and

18  systematic' contacts to support jurisdiction with respect to matters unrelated to activity in the

19  forum applies *only* to corporations, which have never fitted comfortably in a jurisdictional

20  regime based primarily upon 'de facto power over the defendant's person.'" *Burnham v.*

21  *Superior Court of Cal., County of Marin*, 495 U.S. 604, 610 n.1 (1990) (internal citations

22  omitted).

Regardless, Plaintiff has undoubtedly failed to allege sufficient contacts for any of the non-resident Defendants. In the Ninth Circuit, courts may exercise general jurisdiction over a nonresident defendant only if that defendant has "substantial" or "continuous and systematic" contacts with the forum that "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal quotations and citations omitted). Because a finding of general jurisdiction allows a defendant to be haled into court in the forum to answer for any if its activities anywhere in the world, the standard for such a finding is "exacting." *Schwarzenegger*, 374 F.3d at 801. *See also Bancroft*, 223 F.3d at 1086 (noting the general jurisdiction standard is "fairly high" (internal citation and quotation omitted)). A plaintiff must demonstrate not just that a defendant "stepped through the door" of the forum, but that the defendant "made itself at home." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002).

Applying this "exacting" standard, the Ninth Circuit has consistently refused to exercise general jurisdiction over individual defendants. *See, e.g.*, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 & n.1 (9th Cir. 2006) (no general jurisdiction over foreigner who was briefly domiciled in forum); *Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir. 1986) (no general jurisdiction over nonresidents who performed music and sold records in forum); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 1985) (no general jurisdiction over nonresident who vacationed in and visited forum on business three weeks per year), *superseded by statute on other grounds as recognized in Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154 (9th Cir. 1988); *Cubbage*, 744 F.2d at 667-68 (no general jurisdiction over nonresident doctors who worked adjacent to forum, treated patients from forum, and participated in forum-sponsored insurance program); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (no

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 15

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

general jurisdiction over nonresident who visited forum and conducted business there). *See also Panavision Int'l, L.P. v. Toeppen* ("*Toeppen I*"), 938 F. Supp. 616, 620 (C.D. Cal. 1996) (no general jurisdiction over nonresident who visited forum twice a year), *aff'd*, ("*Toeppen II*") 141 F.3d 1316, 1320 (9th Cir. 1998). *Cf. Amoco Egypt*, 1 F.3d at 851 n.3 (noting the Ninth Circuit has regularly "declined to find general jurisdiction even where the contacts were quite extensive") (citations omitted).

**B.  Defendants' Contacts.**

Given the above standard, it is clear that this Court lacks jurisdiction over the twenty-one non-resident Defendants. For the seventeen Defendants lacking any alleged contacts with Washington, there is simply no basis for this Court to exercise jurisdiction over them. Accordingly, they must be dismissed.

The alleged contacts for the four other Defendants—Mullen, Hill, McNeill, and Harris— fall well short of the Ninth Circuit's "exacting" standard, even assuming general jurisdiction over individuals can exist. Plaintiff's allegation that Defendant Mullen "visited Washington State several times," Am. Compl. ¶ 33, is plainly insufficient. *See, e.g.*, *Davis*, 751 F.2d at 1526; *Gates Learjet*, 743 F.2d at 1330-31. And the bulk of Hill, McNeill, and Harris's contacts occurred nearly a decade or more ago. *See* Am. Compl. ¶¶ 34, 39, 48.

In a general jurisdiction analysis, courts consider a defendant's forum contacts for a reasonable period of time up to the filing of the complaint. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed."). Because general jurisdiction has nothing to do with the actual claim, a general jurisdictional analysis is "dispute blind."

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 16

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). Therefore, in this analysis, courts normally do not focus on when the claims arose. *See Metro. Life*, 84 F.3d at 569 (citing general jurisdiction cases considering contacts for several years up to filing of complaint with no emphasis on when claims arose); *Gates Learjet*, 743 F.2d at 1329-31 (looking at four years of contacts before filing of complaint with no emphasis on when claims arose).

Accordingly, Hill, McNeill, and Harris's time stationed at military bases in Washington under orders in the 1990's or early-2000's, *see* Am. Compl. ¶¶ 34, 39, 48, fails to establish this Court's jurisdiction over them. And, as with Defendant Mullen, these Defendants' occasional business visits to Washington clearly are insufficient for an exercise of general jurisdiction. *See, e.g.*, *Davis*, 751 F.2d at 1526; *Gates Learjet*, 743 F.2d at 1330-31; *Panavision Int'l*, 938 F. Supp. at 620. Nor does Harris's ownership of rental property suffice. *See Burnham*, 495 U.S. at 620 ("[W]hen the 'minimum contact' that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation."); *Shaffer v. Heitner*, 433 U.S. 186, 209 (1977).

Indeed, in a similar case in this very district where another former Guantanamo Bay detainee attempted to sue the above Defendants, the court—faced with the exact same alleged contacts as here—held that those contacts did not suffice. *See Hamad v. Gates*, No. C10-591, 2011 WL 2118280, at *3-5 (W.D. Wash. May 27, 2011) (dismissing for lack of personal jurisdiction claims against Hill, McNeill, and Harris). Accordingly, all the non-resident Defendants should be dismissed.

**C. The Exercise of Jurisdiction Here Would Be Unreasonable.**

Regardless of whether Plaintiff has met his burden of showing enough contacts—which he has not—the Court should refuse to find jurisdiction here because the exercise of jurisdiction

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 17

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

would be unreasonable. Defendants have the burden in the reasonableness inquiry. *See Amoco Egypt*, 1 F.3d at 852. The Ninth Circuit considers seven factors in this inquiry: (1) the extent of the defendants' purposeful interjection into the forum's affairs; (2) the burden on the defendants; (3) the extent of conflict with the sovereignty of the defendants' home States; (4) the forum State's interest in the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the chosen forum to the plaintiff's interest in obtaining convenient and effective relief; and (7) the existence of an alternative forum. *See Glencore Grain*, 284 F.3d at 1125 (citation and quotation omitted); *see also Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). In a general jurisdiction analysis, the first factor is the same as the minimum contacts analysis. *See Amoco Egypt*, 1 F.3d at 852. Assuming for the sake of argument that Defendants had sufficient contacts with Washington, this factor is not part of the analysis. *See Amoco Egypt*, 1 F.3d at 852. The remaining factors make clear that the exercise of jurisdiction would be unreasonable.

> **i. The burden on the Defendants.** Litigating this case in Washington would impose a substantial burden on Defendants. They do not reside in Washington—and Plaintiff does not contend otherwise—and therefore would need to travel from out of State to defend the litigation. This is a "significant" burden. *Toeppen II*, 141 F.3d at 1323 ("The burden on [defendant] as an individual living in Illinois to litigate in California is significant."). The burden on Defendants is given "strong weight," although it alone is not dispositive. *Core-Vent Corp.*, 11 F.3d at 1489; *see also Toeppen II*, 141 F.3d at 1323. Nor do Defendants' brief visits make the burden of litigating here any less "significant." *See Toeppen I*, 938 F. Supp. at 619, 620 (noting that nonresident was in forum twice annually, including year claim filed); *Toeppen II*, 141 F.3d at 1323 (describing

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 18

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

burden on nonresident of litigating in forum as "significant"). Therefore, this factor weighs heavily in favor of Defendants.

**ii. The extent of conflict with the Defendants' home States' sovereignty.** As this case currently stands, no specific state law applies to Plaintiff's claims, so no apparent conflict arises between the law of Defendants' home States and that of the forum.

**iii. The forum State's interest in the dispute.** Washington has no distinct interest in this litigation. Plaintiff is not a resident of Washington. Therefore, the forum's legitimate interests in the dispute "have considerably diminished." *Asahi Metal Ind. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 114 (1987). Indeed, the litigation against Defendants implicates virtually no distinct interest of Washington because neither Plaintiff nor the non-resident Defendants are residents of this State and Plaintiff's claims have nothing to do with the forum. Under similar circumstances, courts have found the exercise of jurisdiction unreasonable. *See Metro. Life*, 84 F.3d at 574-75; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987). In *Bearry*, Louisiana residents sued a Kansas-based corporation in Texas after a plane crash in Mississippi. 818 F.2d at 372. Finding the exercise of jurisdiction unreasonable, the court stated that "this suit implicates virtually no distinct interest of Texas . . . [y]et Beech is asked to defend a lawsuit there, away from a plane crash in Mississippi brought by representatives of the deceased Louisiana residents." *Id.* at 377. So too here. Defendants—who reside elsewhere—are asked to defend a lawsuit in Seattle, away from events in Guantánamo and Afghanistan, brought by a resident of Algeria. That Defendant Gates has conceded personal jurisdiction does not affect this analysis. *See supra* p. 13. In sum, Washington has no distinct interest in this litigation, and therefore this factor "weighs heavily against the reasonableness" of exercising jurisdiction. *Metro. Life*, 84 F.3d at 574.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

**iv. The most efficient judicial resolution of the controversy.** Washington will not provide the most efficient judicial resolution to this controversy. In evaluating this factor, courts consider where evidence or witnesses are "likely" to be located. *Core-Vent Corp.*, 11 F.3d at 1489. Defendants note that evidence and witnesses are likely to be located in five places: (1) the District of Columbia, where the seat of the federal government is located; (2) Virginia, where the Pentagon is located; (3) Florida, where United States Southern Command—which exercises control over Guantánamo Bay, Am. Compl. ¶ 35—is located; (4) Guantánamo Bay; and (5) Afghanistan. As this list makes clear, Washington simply will not provide the most efficient resolution of this dispute. Indeed, of all the States in the continental United States, Washington may be the *farthest* from the likely location of evidence and witnesses. Therefore, this factor also weighs against the reasonableness of exercising jurisdiction.

**v. The importance of the forum to Plaintiff's interest in obtaining relief.** Plaintiff has offered no explanation for how Washington is important to his interest in obtaining relief. Regardless, the Ninth Circuit gives little weight to the inconvenience to a plaintiff, and therefore this factor is insignificant here. *See Core-Vent Corp.*, 11 F.3d at 1490.

**vi. The existence of an alternative forum.** Plaintiff bears the burden of proving the unavailability of an alternative forum. *Id.* As explained above, *see supra* pp. 6-10, the District of Columbia and Virginia are available forums. Therefore, this factor also weighs against the reasonableness of exercising jurisdiction.

In sum, four of the six factors relevant here weigh against the exercise of jurisdiction. One of the two factors not weighing against jurisdiction does not affect the analysis and is given little weight in the Ninth Circuit. Accordingly, Defendants have presented a "compelling case," *Amoco Egypt*, 1 F.3d at 851-52, that the exercise of jurisdiction is unreasonable.

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 20

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

**vii. Additional policy arguments.** Beyond all the above reasons against a finding of general jurisdiction here, the exercise of jurisdiction over Defendants Hill, McNeill, and Harris would have broad implications not just for these Defendants, but for servicemembers nationwide. An exercise of jurisdiction—which necessarily would be based in large part on these Defendants' previous assignments in Washington—would place servicemembers at a unique disadvantage compared to other residents of this country. Because servicemembers are frequently stationed under military orders in different States for brief periods throughout their careers, a finding of general jurisdiction based on those assignments could subject servicemembers to the jurisdiction of potentially far-flung jurisdictions at the same time. Imagine a hypothetical servicemember who in the course of a decade is stationed at bases in Maine, Arizona, Alaska, and Hawaii for two years each. At the end of that tour of duty, this servicemember could be forced to defend against litigation in each of those States— simultaneously—for car accidents and other common torts he or she committed in Kansas. Such a fate is not a fitting reward for one who dedicates his or her life to the service of this nation.[5]

Furthermore, here, Plaintiff's claims against Defendants Hill, Harris, and McNeill arise *solely* from their military assignments *outside* of Washington. *See* Am. Compl. ¶¶ 35 (alleging Hill had authority over detention at Guantánamo while acting as Commander, Southern Command); 40 (alleging Harris was responsible for operations at Guantánamo while acting as Commander, Joint Task-Force Guantánamo); 49 (alleging McNeill was responsible for treatment of prisoners in Afghanistan while acting as Commander of Coalition Forces there). It would

---

[5] Defendants do not argue that courts in a State lack general jurisdiction over military personnel while they are stationed in the forum. Indeed, physical presence is the foundation of personal jurisdiction. *See Burnham*, 495 U.S. at 610 ("Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State.").

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

flatly contradict "traditional notions of fair play and substantial justice" to exercise jurisdiction over Defendants based on earlier military assignments here in an unrelated suit arising from later alleged acts that occurred because of military assignments elsewhere.

Lastly, a general jurisdiction finding would have far-reaching implications not just for servicemembers, but for all individuals who have spent several years in a forum for schooling, training, and the like and have returned there periodically. Such a finding would mean that anyone who spent several years in another State attending university and who occasionally returned for business or personal reasons could be subjected to general jurisdiction there more than a decade after graduating. This prospect violates "traditional notions of fair play and substantial justice." Therefore, the Court should not exercise general jurisdiction and instead should dismiss Defendants for lack of personal jurisdiction.

## CONCLUSION

Venue is not proper here because it is proper in the District of Columbia and in the Eastern District of Virginia. Even if venue is proper, this Court should transfer the case to the District of Columbia for the convenience of the parties and in the interest of justice. Additionally, this Court should dismiss all Defendants but former Secretary Gates for lack of personal jurisdiction.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1   DATED this 12th day of March, 2012.

2                                               Respectfully submitted,

3   JENNY A. DURKAN                             STUART F. DELERY
4   United States Attorney                      Acting Assistant Attorney General
    Western District of Washingto               Civil Division

5                                               C. SALVATORE D'ALESSIO, JR.
6                                               Acting Director, Torts Branch

7                                               ANDREA W. McCARTHY
                                                Senior Trial Counsel
8

9                                               s/ Paul E. Werner
                                                PAUL E. WERNER
10                                              MD Bar (conditionally admitted, W.D.
                                                Wash.)
11                                              Trial Attorney
                                                United States Department of Justice
12                                              Torts Branch, Civil Division
                                                P.O. Box 7146
13                                              Ben Franklin Station
                                                Washington, D.C.  20044
14                                              (202) 616-4152 (phone)
                                                (202) 616-4314 (fax)
15                                              E-mail: Paul.Werner@usdoj.gov

16                                              Attorneys for the Individual Named
17                                              Defendants

18

19

20

21

22

23

24

25

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 23

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2012, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of this filing to:

Gwynne L. Skinner
Willamette University School of Law
Clinical Law Program
245 Winter Street, SE
Salem, OR 97301

                                        /s/ Paul E. Werner
                                        PAUL E. WERNER
                                        MD Bar (conditionally admitted, W.D.
                                        Wash.)
                                        Trial Attorney
                                        United States Department of Justice
                                        Torts Branch, Civil Division
                                        P.O. Box 7146
                                        Ben Franklin Station
                                        Washington, D.C.  20044
                                        (202) 616-4152 (phone)
                                        (202) 616-4314 (fax)
                                        E-mail: Paul.Werner@usdoj.gov

DEFS.' MOT. TO DISMISS OR TRANSFER
(C11-1671-JCC) - 24

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152